STATE BOARD OF EQUALIZATION — ESTIMATE OF FUNDS The State Board of Equalization must determine the amount of revenue expected to accrue to the Federal Revenue Sharing Fund during the fiscal year 1975 (July 1, 1974 to June 30, 1975) and include such amount in its pre-legislative estimate of funds available for appropriation for fiscal year 1975. Further, the Board must consider the intent of the Thirty-fourth Oklahoma Legislature expressed in Senate Joint Resolution No. 2 that the Board include no federal revenue sharing funds in such estimate because of the uncertainty of receipt. In the event the Board should determine the circumstances have changed since the enactment of Senate Joint Resolution No. 2 and that federal revenue sharing funds will accrue during fiscal year 1975, then Oklahoma Constitution, Article X, Section 23, provides for such a determination. The Board should include $9,615 as representing the surplus from the last preceding fiscal year of 1973. The State Board of Equalization is not to include in its estimate of revenues available for appropriation during the fiscal year 1975 the revenues which have accrued to the Federal Revenue Sharing Fund during the current fiscal year (July 1, 1973 through June 30, 1974) because these revenues are not to be included in the exclusive formula provided for by Oklahoma Constitution, Article X, Section 23, and, therefore, may not be included within the estimate. However, while in session, the Second Session of the Thirty-fourth Legislature may properly appropriate the cash on hand in the Federal Revenue Sharing Fund. This will acknowledge receipt of your letter wherein you ask what position the State Board of Equalization should take in regard to the Federal Revenue Sharing Fund in preparing an itemized estimate of funds available for appropriation for the fiscal year 1975. Receipt is also acknowledged of your report dated November 19, 1973, prepared by you as the Director of State Finance, addressed to the State Board of Equalization, which report is attached hereto and made a part of this opinion by reference. Cited in your letter are several authorities for our attention including Oklahoma Constitution, Article X, Section 23 ; State and Local Fiscal Assistance Act of 1972 (Public Law 92-512), 31 U.S.C.A. 1221, et seq., also known as the Revenue Sharing Act; Senate Bill No. 73, First Regular Session of the Thirty-fourth Legislature, creating the "Federal Revenue Sharing Fund"; and Senate Joint Resolution No. 2, First Regular Session of the Thirty-fourth Legislature. You state in your letter that your office is of the opinion that the Federal Revenue Sharing Fund created by Senate Bill No. 73 is a "special fund" as referred to in Oklahoma Constitution, Article X, Section 23. The statement of opinion in your letter to the effect that the Federal Revenue Sharing Fund created by Senate Bill No. 73 is a "special fund" as referred to in Oklahoma Constitution, Article X, Section 23, is supported by the decision in the case of Draper v. State Board of Equalization, 414 P.2d 276 (Okl. 1966). In the Draper case, the Court stated: "Special funds, in the contemplation of Section 23, include only those funds that are supported by direct taxes, fees or other revenue." (Underlining added) Oklahoma Constitution, Article X, Section 23, provides in pertinent part as follows: ". . . The State Board of Equalization shall make an itemized estimate of the revenues to be received by the State under the laws in effect at the time such estimate is made, for the next ensuing fiscal year showing separately the revenues to accrue to the credit of the General Revenue Fund and each special fund of the State, and the total amount of such estimate for such fiscal year shall not exceed the total revenue which accrued to each such fund for the last preceding fiscal year, to which amount shall be added the cash surplus, if any, from such preceding fiscal year in the hands of the State Treasurer to the credit of any such fund and not previously appropriated by the State Legislature. . . The Legislature shall not pass or enact any bill, act or measure making an appropriation of money for any purpose until such estimate is made and filed, unless the State Board of Equalization has failed to file said estimate at the time of convening of said Legislature, then, in such event, it shall be the duty of the Legislature to make such estimate pursuant to the provisions of this amendment, and all appropriations made in excess of such estimate shall be null and void." The State Board of Equalization has the constitutionally imposed duty to follow an exclusive formula for arriving at its pre-legislative estimate of federal revenue sharing funds for the fiscal year 1975, which is to include the following: (1) revenue separately expected to accrue to the Federal Revenue Sharing Fund during the next ensuing fiscal year (July 1, 1974 to June 30, 1975), and (2) the cash surplus, if any, from the preceding fiscal year (July 1, 1972 to June 30, 1973), in the hands of the State Treasurer to the credit of the Federal Revenue Sharing Fund and not previously appropriated by the State Legislature. Senate Joint Resolution No. 2, Thirty-fourth Legislature, First Regular Session, which has now been codified into the Oklahoma Statutes as 68 O.S. 2463.1 [68-2463.1] (1973), has a bearing on your question. Senate Joint Resolution No. 2 recites that sufficient dependence cannot be placed on periodic appropriations of the United States Congress, and advance estimates of congressional appropriations, because to do so is impractical, and that extreme financial crisis would befall the State of Oklahoma should reliance be placed upon receiving anticipated "revenue sharing funds" in the event the United States Government were to fail to make such funds available. As you are well aware, the opinion expressed by the Legislature in Senate Joint Resolution No. 2 regarding the unreliability of depending upon periodic appropriations by the United States Congress, has become a reality in other areas of state financing as evidenced by the "impoundment" of many sources of federal funds, as being unavailable, even though they were duly appropriated by Congress. Section 1 of Senate Joint Resolution No. 2, supra, states: "It is the legislative intent that the State Board of Equalization not include in their estimate of revenues available for appropriation for the fiscal year ending June 30, 1975, and subsequent fiscal years, the funds that may be available to the State of Oklahoma through the State and Local Fiscal Assistance Act of 1972." Senate Joint Resolution No. 2 was unanimously approved by the House of Representatives and Senate Committees on Revenue and Taxation, as well as being unanimously approved by both the State House of Representatives and Senate. In addition, it was signed into law by Governor David Hall on April 30, 1973. The State Legislature routinely makes its intent known by means of a resolution, without enacting the same as a general law, and without signature of the Governor. However, a joint resolution duly passed by both houses of the Legislature and signed by the Governor becomes a general law of the State. The Legislature and Governor properly exercised their prerogative in enacting Senate Joint Resolution No. 2 as a general law of the State. The State Board of Equalization can comply with the provisions of both Senate Joint Resolution No. 2 and with Article X, Section 23 of the Oklahoma Constitution, by making a determination that the funds will not accrue and by refusing to certify the federal revenue sharing funds as available for appropriation for fiscal year 1975. To the contrary, a determination that such funds will accrue, will, regardless of the constitutional question, violate the express provisions of Senate Joint Resolution No. 2. For the Board of Equalization to estimate that the State can expect to accrue this anticipated federal revenue sharing money to the credit of the Federal Revenue Sharing Fund, is to make an estimate diametrically opposed to the unanimous opinion expressed by both houses of the State Legislature, and of the Governor, by their enactment and signing into law of Senate Joint Resolution No. 2, 68 O.S. 2463.1 [68-2463.1] (1973). As it relates to the question of cash surplus to be included by the Board, in the Federal Revenue Sharing Fund Schedule of Payment Dates and Estimate of Entitlement Payments contained in the report prepared by you as Director of State Finance, there is reflected the following. You show the actual income to the Federal Revenue Sharing Fund for the fiscal year 1973 (July 1, 1972 to June 30, 1973) to be $24,603,418, plus $9,615 earned as interest. You also show appropriations for the fiscal year 1973 to be $24,603,418, leaving a balance in the hands of the State Treasurer, not appropriated by the Legislature, in the amount of $9,615. There is other language in the Draper case, supra, which is particularly helpful in arriving at an answer to the question raised by you. The following language is contained in the body of that opinion. "It is noted that the 'estimate' to be made by the Board prior to the convening of the Legislature is clear and explicit. The Prelegislative Session 'estimate' is not really an estimate but is a formula by which the revenues to be received during the next biennium may be reduced to a mathematical certainty." "The method provided in Section 23 for estimating maximum revenues to be received during the next biennium is exclusive and binding upon the Board and the Legislature. . . . "From Section 23 it is clear that when the Board made its estimate on December 2, 1964, it was not authorized to anticipate any surplus revenues would accrue in the General and special funds during the current fiscal year . . . These items are not within the formula and may not be included within the estimate." "Section 23 provides that surplus cash from the preceding fiscal year shall be included in the estimate; it makes no provision for estimating surplus revenue to accrue in the current biennium." The upcoming Legislature may constitutionally spend the cash on hand in the Federal Revenue Sharing Fund, as was done in the First Session of the Thirty-fourth Legislature. Your report indicates there will be $22,631,900, if it continues to accrue as you project. To this would be added any accrued interest in the Fund. It is, therefore, the opinion of the Attorney General that the State Board of Equalization must determine the amount of revenue expected to accrue to the Federal Revenue Sharing Fund during the fiscal year 1975 (July 1, 1974 to June 30, 1975) and include such amount in its pre-legislative estimate of funds available for appropriation for fiscal year 1976. Further, the Board must consider the intent of the Thirty-fourth Oklahoma Legislature expressed in Senate Joint Resolution No. 2 that the Board include no federal revenue sharing funds in such estimate because of the uncertainty of receipt. In the event the Board should determine the circumstances have changed since the enactment of Senate Joint Resolution No. 2 and that federal revenue sharing funds will accrue during fiscal year 1975, then Oklahoma Constitution, Article X, Section 23, provides for such a determination. It is further the opinion of the Attorney General that the Board should include $9,615 as representing the surplus from the last preceding fiscal year of 1973. It is further the opinion of the Attorney General that the State Board of Equalization is not to include in its estimate of revenues available for appropriation during the fiscal year 1975 the revenues which have accrued to the Federal Revenue Sharing Fund during the current fiscal year (July 1, 1973 through June 30, 1974) because these revenues are not to be included in the exclusive formula provided for by Oklahoma Constitution, Article X, Section 23, and, therefore, may not be included within the estimate. Draper v. State Board of Equalization, supra. However, while in session, the Second Session of the Thirty-fourth Legislature may properly appropriate the cash on hand in the Federal Revenue Sharing Fund. (Odie A. Nance) ** See: Opinion No. 90-017 (1990) **